IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE)

|  |  |  |
|---|---|---|
| MICHAEL H. HOLLAND et al., TRUSTEES OF THE UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT FUND, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04-679-RDB |
| ATLAS ALLOYS, INC. et al., | ) ) | |
| Defendants. | ) ) ) | |

## SECOND AMENDED COMPLAINT

### Jurisdiction and Venue

1.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the

Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701–9722, and

Section 4301 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1451.

Jurisdiction is founded upon 28 U.S.C. § 1331, Section 9721 of the Coal Act, 26 U.S.C. § 9721,

and Section 4301(c) of ERISA, 29 U.S.C. § 1451(c).

2.      Venue in this district is proper under 28 U.S.C. § 1391(b), Section 9721 of the

Coal Act, 26 U.S.C. § 9721, and Section 4301(d) of ERISA, 29 U.S.C. § 1451(d).

### Parties

#### Plaintiffs

3.      Plaintiffs Michael H. Holland, William P. Hobgood, Marty D. Hudson, Thomas

O.S. Rand, Elliot A. Segal, Carl E. Van Horn, and Gail R. Wilensky (collectively referred to as

"Trustees") are the Trustees of the United Mine Workers of America Combined Benefit Fund

("Combined Fund").

<u>Defendants</u>

4.      Defendant Atlas Alloys, Inc. is an assigned operator under the Coal Act or a

related person to an assigned operator.  It was not an individually named plaintiff in <u>National</u>

<u>Coal Ass'n</u> v. <u>Chater</u>, No. CV-94-H-780-S (N.D. Ala. June 2, 1995 & July 20, 1995), <u>aff'd</u>, 81

F.3d 1077 (11th Cir. 1996) (hereinafter "<u>NCA</u>").  On information and belief, it was not a

member of the National Coal Association ("NCA") during the entire period April 1, 1994

through July 20, 1995.  On information and belief, it was not a member of the NCA at any time

between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in

Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

<u>NCA</u> during the entire period April 1, 1994 through July 20, 1995.

5.      Defendant B H & H Coal Co. Inc. is an assigned operator under the Coal Act or a

related person to an assigned operator.  It was not an individually named plaintiff in <u>NCA</u>.  On

information and belief, it was not a member of the NCA during the entire period April 1, 1994

through July 20, 1995.  On information and belief, it was not a member of the NCA at any time

between April 1, 1994 and July 20, 1995. On information and belief, it is not incorporated in

Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

<u>NCA</u> during the entire period April 1, 1994 through July 20, 1995.

6.      Defendant B & L Excavation Co. Inc. is an assigned operator under the Coal Act

or a related person to an assigned operator.  It was not an individually named plaintiff in <u>NCA</u>.

2

On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

7.      Defendant Bear Coal Co. Inc. is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.   On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

8.      Defendant Berry Trucking Co. Inc. is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

9.      Defendant Charbon Bridge Inc. is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On information and belief, it was not a member of the NCA during the entire period April 1, 1994

through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

10.     Defendant Continental Conveyor & Eqp Co. is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

11.     Defendant Contracting Engineering is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

12.     Defendant Derby Surface Inc. is an assigned operator under the Coal Act or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On information and belief, it was not a member of the NCA during the entire period April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any time

4

between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in

Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

NCA during the entire period April 1, 1994 through July 20, 1995.

13.    Defendant Fetterolf Group, Inc. is an assigned operator under the Coal Act or a

related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On

information and belief, it was not a member of the NCA during the entire period April 1, 1994

through July 20, 1995.  On information and belief, it was not a member of the NCA at any time

between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in

Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

NCA during the entire period April 1, 1994 through July 20, 1995.

14.    Defendant Gem Coal Inc. is an assigned operator under the Coal Act or a related

person to an assigned operator.  It was not an individually named plaintiff in NCA.  On

information and belief, it was not a member of the NCA during the period April 1, 1994 through

July 20, 1995.  On information and belief, it was not a member of the NCA at any time between

April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in Alabama,

Florida or Georgia.  On information and belief, it was not in privity with a party to NCA during

the entire period April 1, 1994 through July 20, 1995.

15.    Defendant Gene R Jones Trucking, Inc. is an assigned operator under the Coal

Act or a related person to an assigned operator.  It was not an individually named plaintiff in

NCA.  On information and belief, it was not a member of the NCA during the entire period

April 1, 1994 through July 20, 1995.  On information and belief, it was not a member of the

NCA at any time between April 1, 1994 and July 20, 1995.  On information and belief, it is not

incorporated in Alabama, Florida or Georgia.  On information and belief, it was not in privity

with a party to NCA during the entire period April 1, 1994 through July 20, 1995.

16.     Defendant Matt Mining Company, Inc. is an assigned operator under the Coal Act

or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.

On information and belief, it was not a member of the NCA during the entire period April 1,

1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any

time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated

in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

NCA during the entire period April 1, 1994 through July 20, 1995.

17.     Defendant Old Circle Coal Co. is an assigned operator under the Coal Act or a

related person to an assigned operator.  It was not an individually named plaintiff in NCA.  On

information and belief, it was not a member of the NCA during the entire period April 1, 1994

through July 20, 1995.  On information and belief, it was not a member of the NCA at any time

between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated in

Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to

NCA during the entire period April 1, 1994 through July 20, 1995.

18.     Defendant Sodder Trucking Co., Inc. is an assigned operator under the Coal Act

or a related person to an assigned operator.  It was not an individually named plaintiff in NCA.

On information and belief, it was not a member of the NCA during the entire period April 1,

1994 through July 20, 1995.  On information and belief, it was not a member of the NCA at any

time between April 1, 1994 and July 20, 1995.  On information and belief, it is not incorporated

6

in Alabama, Florida or Georgia.  On information and belief, it was not in privity with a party to
<u>NCA</u> during the entire period April 1, 1994 through July 20, 1995.

Facts

19.     Prior to February 1, 1993, retired coal miners formerly represented by the
International Union, United Mine Workers of America, and their dependents, numbering more
than 100,000, received health care benefits from two collectively-bargained plans — the United
Mine Workers of America ("UMWA") 1950 Benefit Plan and Trust ("1950 Plan") and the
UMWA 1974 Benefit Plan and Trust ("1974 Plan").  The 1950 and 1974 Plans were established
pursuant to collective bargaining agreements, known as National Bituminous Coal Wage
Agreements ("NBCWAs"), between the International Union, UMWA and certain employers and
associations, including the Bituminous Coal Operators' Association, Inc.

20.      During the 1970s and 1980s a number of factors, including "a significant
reduction in the amount of coal produced under the NBCWA's, the retirement of a whole
generation of miners and the rapid escalation of the cost of medical care," substantially
weakened the financial viability of the 1950 and 1974 Plans, <u>Barrick Gold Exploration, Inc.</u> v.
<u>Hudson</u>, 823 F. Supp. 1395, 1399 (S.D. Ohio 1993), <u>aff'd</u>, 47 F.3d 832 (6th Cir. 1995).  By
1990, the 1950 and 1974 Plans had incurred deficits of over $100 million.

21.     In response to the financial difficulties experienced by the 1950 and 1974 Plans,
Congress enacted the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act") as part of
the Energy Policy Act of 1992, P.L. No. 102-486, §§ 19141–19143, 106 Stat. 2776, 3036.
Section 9702(a)(1) of the Coal Act directed the Trustees to create the Combined Fund,
and § 9702(a)(2) directed merger of the 1950 and 1974 Plans into the Combined Fund.

7

22.     On September 1, 1993, pursuant to § 9702(a)(1) of the Coal Act, the Trustees

adopted the UMWA Combined Fund Trust Document ("Trust Document").  Article VIII

empowers the Trustees to "enforce any right, obligation or claim in their absolute discretion and

in general to protect in any way the interest of the Trust," and to "do all acts which may be

necessary to comply with any of the requirements of the Coal Industry Retiree Health Benefit

Act of 1992, ERISA or any other federal law."

23.     Sections 9702(a)(3)(B) and (C) of the Coal Act provide that the Combined Fund

is an employee welfare benefit plan within the meaning of § 3(1) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), and a multiemployer plan within

the meaning of § 3(37) of ERISA, 29 U.S.C. § 1002(37).  The Trustees are fiduciaries of the

Combined Fund within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

24.     Sections 9703(a)(1) and 9703(f) of the Coal Act direct the Combined Fund to

provide health care benefits to certain retired coal miners and their eligible dependents, and in

particular to each coal industry retiree who, on July 20, 1992, "was eligible to receive, and

receiving, benefits" from the 1950 Plan or 1974 Plan; and to each individual who on July 20,

1992, "was eligible to receive, and receiving, benefits" from the 1950 Plan or 1974 Plan by

reason of a relationship to such retiree.  Section 9703(f) of the Coal Act refers to individuals

covered by the Combined Fund as "beneficiaries" of the Fund.

25.     Sections 9703(b) and 9704(a)(1) of the Coal Act provide that health care benefits

paid by the Combined Fund are to be funded in part by "health benefit premiums" paid to the

Combined Fund by assigned operators.  Pursuant to 26 U.S.C. § 9701(c)(5), an "assigned

operator" is a coal operator to whom a coal industry retiree has been assigned by the

Commissioner of the Social Security Administration ("Commissioner") under § 9706(a) of the

Coal Act.

26.     Section 9704(b)(2) of the Coal Act invests the Commissioner with, <u>inter</u> <u>alia</u>,

responsibility for determining the annual, per beneficiary health benefit premium.  Section

9704(b)(2) provides that the premium shall be "equal to the sum of—

> "(A) the amount determined by dividing—
>
>> "(i) the aggregate amount of payments from the 1950 UMWA
>> Benefit Plan and the 1974 UMWA Benefit Plan for health benefits (<u>less</u>
>> <u>reimbursements</u> but including administrative costs) for the plan year
>> beginning July 1, 1991, for all individuals covered under such plans for
>> such plan year, by
>>
>> "(ii) the number of such individuals, plus
>
> "(B) the amount determined under subparagraph (A) multiplied by the
> percentage (if any) by which the medical component of the Consumer Price Index
> for the calendar year in which the plan year begins exceeds such component for
> 1992."  (Emphasis added.)

27.     Prior to March 31, 1995, responsibility for calculating the per beneficiary health

benefit premium under § 9704(b)(2) of the Coal Act was assigned to the Secretary of Health and

Human Services ("Secretary").  Section 108(h)(9)(A) of the Social Security Independence and

Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, 1487 (Aug. 15, 1994),

amended § 9704(b)(2) to substitute the Commissioner of Social Security for the Secretary.

Pursuant to P.L. No. 103-296 § 110(a), 1994 U.S.C.C.A.N. (108 Stat.) 1490, 42 U.S.C. § 401

note, the substitution of the Commissioner for the Secretary became effective March 31, 1995.

28.     The term "reimbursements" in § 9704(b)(2)(A)(i) of the Coal Act includes certain

payments made to the 1950 and 1974 Plans by the Health Care Financing Administration of the

U.S. Department of Health and Human Services ("HCFA") for the period July 1, 1991, through June 30, 1992.

29.    For the period July 1, 1991, through June 30, 1992, the 1950 and 1974 Plans made payments of $156.8 million for Medicare Part B expenses and Medicare administrative costs.  For that same period, HCFA made payments of $182.3 million to the 1950 and 1974 Plans pursuant to a "capitation agreement" between the Secretary and the 1950 and 1974 Plans, governing payments from HCFA to the two Plans "for Medicare costs."  HCFA's payments to the 1950 and 1974 Plans for the plan year beginning July 1, 1991, exceeded the two Plans' Medicare Part B expenses and Medicare administrative costs for that plan year by $25.5 million.

30.    Pursuant to § 9704(h) of the Coal Act, by letter dated September 13, 1993, the Trustees informed the Secretary that the 1950 and 1974 Plans had made payments for Medicare Part B expenses and Medicare administrative costs for the period July 1, 1991, through June 30, 1992, totaling $156.8 million and had received from HCFA for the same period amounts totaling $182.3 million as Medicare medical and administrative capitation payments.

31.    By letter dated October 4, 1993, the Acting Commissioner of the Social Security Administration ("SSA"), on behalf of the Secretary, informed the Trustees that the per beneficiary health benefit premium for the plan years beginning February 1, 1993, and October 1, 1993, was $2,245.83.  In calculating the premium pursuant to § 9704(b)(2)(A)(i) of the Coal Act, the Secretary subtracted as "reimbursements" an amount equal to the 1950 and 1974 Plans' Medicare Part B expenses and Medicare administrative costs during the period July 1, 1991, through June 30, 1992, which totaled $156.8 million.

32.    On  April 1, 1994, seven assigned operators and the National Coal Association ("NCA") filed a complaint in United States District Court for the Northern District of Alabama, naming as the sole defendant Donna Shalala, Secretary of Health and Human Services.  National Coal Ass'n v. Shalala, No. CV-94-H-780-S (hereinafter "NCA").  The complaint in NCA asserted that in calculating the per beneficiary health benefit premium, the Secretary is required to subtract as "reimbursements" within the meaning of § 9704(b)(2)(A)(i) of the Coal Act the total amount paid by HCFA to the 1950 and 1974 Plans for the period July 1, 1991, through June 30, 1992, $182.3 million.

33.    By motion dated June 13, 1994, defendant Shalala moved to dismiss the complaint in NCA on grounds, in part, of plaintiffs' failure to join the Trustees of the Combined Fund as necessary parties under Rule 19(a), Fed. R. Civ. P.  The NCA plaintiffs opposed that motion on the grounds, in part, that the Trustees were not necessary parties to the litigation.  By order dated August 12, 1994, the district court denied the motion.

34.    By letter dated September 13, 1994, while the NCA litigation was pending before the United States District Court for the Northern District of Alabama, Harry C. Ballantyne, Chief Actuary of SSA, informed the Trustees that the per beneficiary health benefit premium for the plan year beginning October 1, 1994, would be $2,349.38.  That premium level was based on the same interpretation of "reimbursements" that the Secretary had used in calculating per beneficiary health benefit premiums for the plan years beginning February 1, 1993, and October 1, 1993.

35.    On July 20, 1995, the United States District Court for the Northern District of Alabama ordered the Commissioner of SSA to recompute the initial premium and all subsequent

premiums calculated pursuant to § 9704(b)(2) of the Coal Act "by deducting the total payments

the Health Care Financing Administration * * * made to the UMWA 1950 Benefit Plan and the

UMWA 1974 Benefit Plan * * * for the plan year July 1, 1991 to June 30, 1992." National Coal

Ass'n v. Chater, No. CV-94-H-780-S, at 1995 U.S. Dist. LEXIS 21125 (July 20, 1995).

     36.     By letter dated July 28, 1995, Harry C. Ballantyne, Chief Actuary of the SSA,

informed the Trustees that the Commissioner had recalculated premium levels in accordance

with the NCA order.  The letter stated that while a decision by the Government to appeal the

NCA order had not yet been made, "[i]f the court's decision remains unappealed, the per-

beneficiary premium properly would be set at $2,013.83 for the plan years beginning February 1,

1993 and October 1, 1993, and $2,106.68 for the plan year beginning October 1, 1994." These

amounts are $232 less than the Secretary's initial determination for the February 1, 1993, and

October 1, 1993, plan years, and $242.70 less than the Secretary's initial determination for the

October 1, 1994, plan year.

     37.     By letter dated September 13, 1995, after the Government had appealed the order

of the district court in NCA to the United States Court of Appeals for the Eleventh Circuit, Harry

C. Ballantyne, Chief Actuary of the SSA, informed the Trustees that the per beneficiary health

benefit premium for the plan year beginning October 1, 1995, had been "determined in

accordance with the decision of the United States District Court for the Northern District of

Alabama in [NCA]" to be $2,200.53.  As the attached explanation showed, the annual per

beneficiary premium reflected the $182.3 million payment that HCFA had made to the 1950 and

1974 Plans for the period July 1, 1991, through June 30, 1992.  The letter also stated that the

Commissioner had computed the premium "that will result if the Government's appeal is

successful" to be $2,454.05.  That premium, which is $253.52 more than the lower premium

calculated by the Commissioner, used $156.8 million as the amount to be subtracted as

"reimbursements."

38.     In accordance with the September 13, 1995, letter from SSA, the Trustees billed

assigned operators based on a per beneficiary health benefit premium of $2,200.53 for the plan

year beginning October 1, 1995.

39.     By decision dated April 26, 1996, the United States Court of Appeals for the

Eleventh Circuit affirmed the district court's order in NCA.  National Coal Ass'n v. Chater, 81

F.3d 1077, 1081–82.  SSA did not file a petition for writ of certiorari.

40.     The methodology required by the district court's order in NCA for calculating the

per beneficiary health benefit premium results in a loss of approximately 10 percent of all

contributions the Trustees would have received on behalf of beneficiaries over the remaining life

of the Combined Fund, had the Commissioner's interpretation of the term "reimbursements"

been sustained.  This loss will amount to several hundred million dollars.

Proceedings in Holland I

41.     On July 26, 1996, the Trustees brought an action for declaratory and injunctive

relief in the United States District Court for the District of Columbia against the current

Commissioner's predecessor in office.  See Holland v. Chater, Civ. Action No. 96-1744 (D.D.C.,

complaint filed July 26, 1996) (hereinafter "Holland I").

42.     The Trustees' prayer for relief requested that the district court in Holland I enter

judgment on the Trustees' behalf as follows:

13

"A.     Declaring that the term 'reimbursements' as used in 26 U.S.C. § 9704(b)(2) does not include monies paid by HCFA to the 1950 and 1974 Plans that exceeded the Plans' Medicare Part B expenses and Medicare administrative costs during the plan year of July 1, 1991, through June 30, 1992.

"B.     Enjoining the Commissioner from setting future per beneficiary health benefit premiums which include in the 'reimbursements' calculated pursuant to 26 U.S.C. § 9704(b)(2) monies paid by HCFA that exceeded the 1950 and 1974 Plans' Medicare Part B expenses and Medicare administrative costs during the plan year of July 1, 1991, through June 30, 1992.

"C.     Order the Commissioner to recalculate per beneficiary health benefit premiums for plan years beginning February 1, 1993, October 1, 1993, October 1, 1994, and October 1, 1995, at rates which do not incorporate into the calculation set forth in 26 U.S.C. § 9704(b)(2) monies paid by HCFA to the 1950 and 1974 Plans that exceeded the Plans' Medicare Part B expenses and Medicare administrative costs during the plan year of July 1, 1991, through June 30, 1992.

"D.     Granting plaintiffs such other and further relief as the Court may deem just and proper."

43.     The Commissioner moved to dismiss the complaint in Holland I on September 27, 1996, primarily on the ground that the Trustees did not have a valid claim under the Administrative Procedure Act in the light of the Eleventh Circuit judgment in NCA.

44.     On October 9, 1996, the National Mining Association ("NMA"), the successor to the trade association NCA, and seven of the eight coal companies that had been plaintiffs in the NCA litigation — Alabama Land & Mineral Corporation, Allied Signal, Inc., Berwind Corporation, Bethlehem Steel Corporation, Costain Coal, Inc., LTV Steel Company, Inc., and The Pittston Company — moved for leave to intervene in Holland I as defendants.  The NMA and seven operators stated in support of their motion that "NMA members account for approximately 63 percent of all coal produced in the United States, and many NMA members are Assigned Operators required to pay premiums under the Coal Act.  Members of NMA who are

Assigned Operators have paid 50 percent or more of all premiums paid to the Combined Fund since February 1, 1993, when the Fund was established." They also stated that the relief the Trustees requested in Holland I "would directly affect Alabama Land & Mineral Corporation, AlliedSignal, Inc., Berwind Corporation, Bethlehem Steel Corporation, Costain Coal, Inc., LTV Steel Company, Inc., The Pittston Company and members of NMA who are Assigned Operators because it would increase the amount of premiums paid by Assigned Operators."

45.     On October 15, 1996, the district court in Holland I granted the motion for leave to intervene.

46.     On October 9, 1996, the defendant-intervenors in Holland I moved to dismiss the complaint in that case on grounds, inter alia, that plaintiffs' action was barred by res judicata or collateral estoppel in the light of the Eleventh Circuit judgment in NCA.

47.     The Trustees moved for summary judgment in Holland I on June 18, 1997.

48.     In a memorandum opinion and order dated September 8, 1998, the district court in Holland I denied the motions to dismiss of the Commissioner and the defendant-intervenors. Holland v. Apfel, 23 F. Supp. 2d 21 (D.D.C. 1998).

49.     On September 25 and 30, 1998, respectively, the defendant-intervenors and the Commissioner filed answers to the Trustees' complaint in Holland I.

50.     On October 15, 1998, the defendant-intervenors in Holland I cross-moved for summary judgment.

51.     In a memorandum opinion and order dated February 25, 2000, the district court in Holland I granted the Trustees' motion for summary judgment, denied the defendant-intervenors' motion for summary judgment, and ordered and declared "that Commissioner

15

Apfel's interpretation of the word 'reimbursements' in the context of 26 U.S.C. § 9704(b)(2) to mean only those payments for the base year — July 1, 1991 through June 30, 1992 — that compensated the UMWA Plans for actual expenses for Medicare-covered services and related administrative costs, deserves judicial deference as a reasonable interpretation of the statute." Holland v. Apfel, Civ. Action No. 96-1744, order at 1-2 (D.D.C. Feb. 25, 2000).

52.     On March 10, 2000, the Trustees moved to alter or amend the judgment in Holland I to include injunctive relief.

53.     In an amended order and judgment dated January 12, 2001, supported by an amended memorandum opinion dated January 17, 2001, the district court in Holland I granted the Trustees' motion to alter or amend the judgment, restated its prior declaratory judgment in Paragraph 2(c) of the amended order, and added the following two injunctive orders:

> "3.     ORDERED that the defendant Commissioner of Social Security recalculate the per beneficiary health benefit premium for the initial plan year commencing February 1, 1993 and all subsequent plan years in accordance with 26 U.S.C. § 9704(b)(2), as interpreted in Paragraph 2(c) of the Amended Order;
>
> "4.     ORDERED that the defendant Commissioner of Social Security notify the Trustees of the amounts of the per beneficiary health benefits premiums calculated pursuant to Paragraphs 2(c) and 3 of this Amended Order for the initial plan year commencing February 1, 1993, and subsequent plan years through the current plan year, and provide a copy of the notification to counsel for the defendant-intervenor coal operators." Holland v. Apfel, Civil Action No. 96-1744 (D.D.C. Jan. 12, 2001) (unreported).

The district court in Holland I stayed Paragraphs 3 and 4 of its amended order "until such time that any appeals from the Court's judgment are concluded." Id. At 3.

54.     The Commissioner and the defendant-intervenors in Holland I, except for Alabama Land & Mineral Corporation, appealed the amended order and judgment in that case.

55.     In an opinion dated November 8, 2002, the United States Court of Appeals for the

District of Columbia Circuit issued its decision on the appeals.  Holland v. National Mining

Ass'n, 309 F.3d 808 (D.C. Cir. 2002).  In that decision, the D.C. Circuit held that the Trustees'

lawsuit "can result in a viable remedy in favor of the Trustees and against the Commissioner,

with respect to the coal operators who are not covered by the Eleventh Circuit's injunction," but

that "an injunction issued in the D.C. Circuit can bind the Commissioner only with respect to

coal companies who were not already covered by the Eleventh Circuit's injunction."  309 F.3d at

814.  Accordingly, the D.C. Circuit concluded:

> "[W]e affirm the District Court's denial of the motion to dismiss. We
> vacate the District Court's injunction insofar as it purports to bind the
> Commissioner with respect to coal companies who had the benefit of the Eleventh
> Circuit judgment. We vacate the agency's nationwide implementation of the
> Eleventh Circuit's interpretation, because the nationwide implementation has yet
> to be appropriately justified by the agency. We reverse the District Court's
> judgment upholding the Commissioner's original interpretation of the statute, for
> this matter must be addressed by the agency in the first instance. We remand the
> case to the District Court with specific instructions to remand the case to the
> agency for further consideration of the matter in light of this opinion."  309 F.3d
> at 819.

The D.C. Circuit issued its mandate on January 3, 2003.

56.     The district court in Holland I received the mandate of the D.C. Circuit in Holland

I on January 6, 2003.

57.     On January 9, 2003, the district court in Holland I remanded the case to SSA for

further consideration consistent with the D.C. Circuit's November 8, 2002 Opinion.

58.     By letter dated June 10, 2003, Nancy Veillon, Associate Commissioner, Office of

Program Benefits, Social Security Administration, advised the Trustees of SSA's decision on

remand from the district court in <u>Holland I</u>.  (A copy of Ms. Veillon's June 10, 2003 letter is

Exhibit 1 hereto.)  Ms. Veillon reported:

> "[T]he Court of Appeals for the District of Columbia Circuit ('D.C. Circuit')
> ordered that the case be remanded in part so that the Agency could address
> whether the Agency 'voluntarily acquiesced in the Eleventh Circuit's
> interpretation, believing it to be a reasonable interpretation, or rather believed that
> it had no choice but to apply the revised interpretation nationwide.'  <u>Holland</u> v.
> <u>Barnhart</u>, 309 F.3d 808, 819 (D.C. Cir. 2002).
>
> "After a diligent search, the Agency has been unable to locate documents that
> illuminate the rationale that provided the basis for the 1996 decision to publish a
> single per-beneficiary rate.  The officials involved in making the decision are no
> longer with the agency, so there is no available 'institutional memory' sufficient
> to determine whether the Agency voluntarily acquiesced in the Eleventh Circuit's
> interpretation or believed that it had no choice but to apply the revised
> interpretation nationwide.  Accordingly, to the extent that the Court of Appeals
> has requested that the Agency provide an answer to the historical question
> concerning its rationale in 1996, the Agency is unable to provide such an answer.
>
> "It is possible, however, to articulate some of the factors that were likely
> considered when making the decision in 1996 to apply the Eleventh Circuit's
> interpretation on a nation-wide basis.  While some Agency officials may have
> believed that a decision to apply the Eleventh Circuit's interpretation on a nation-
> wide basis was compelled by the <u>National Coal</u> decision, it is likely that others
> believed that the <u>National Coal</u> decision was not necessarily binding but that
> considerations of fairness and ease of administration justified having a uniform
> premium for all coal operators.
>
> "While we are unable to establish the rationale for our decision in the past to
> apply the Eleventh Circuit's interpretation on a nation-wide basis, we believe that
> it is now appropriate to adopt a different approach in light of recent litigation and
> the current financial condition of the Fund.  The recent D.C. Circuit opinion in
> <u>Holland</u> made clear that we were not required to apply the holding of the Eleventh
> Circuit to coal operators who were not parties to the <u>National Coal</u> litigation.
> Moreover, while considerations of fairness and uniformity remain important, the
> Fund's worsening financial condition makes it essential that the Fund be afforded
> all the premium revenues contemplated by the Coal Act.
>
> "Accordingly, for the determination letter for the plan year beginning October 1,
> 2003, we intend to provide two per-beneficiary premium calculations.  The higher
> amount will represent a calculation based on the initial interpretation of the term

'reimbursement.' We believe that this interpretation is consistent with the text and structure of the Coal Act as a whole and represents a permissible construction of the statute's plain language and of the term 'reimbursement.' The lower amount will represent a calculation consistent with the interpretation established in <u>National Coal</u>. The establishment of two calculations will allow the Fund to apply the higher premium amount to those coal operators who were not parties to the <u>National Coal</u> litigation. The Agency believes that implementation of the Eleventh Circuit's decision in this manner, which enhances the financial viability of the UMWA Combined Benefit Fund, is consistent with the Coal Act's stated purpose of stabilizing plan funding and allowing for the provision of health care benefits to retired coal miners and their dependents. In addition, we are providing below a complete time series of these two separate per-beneficiary premiums for each of the past plan years beginning in 1993. The table below presents these two series of premiums along with the data on the Consumer Price Index used in the determinations of these amounts.

**Determination of the Per-Beneficiary Health Benefit Premium**

| Plan year(s) ending Sept. 30 | Year | Medical care component of CPI-U | | | Lower Premium | | Higher Premium | |
|---|---|---|---|---|---|---|---|---|
| | | | May-Aug. average | Increase over 1992 average[2] | Increase over base amount of $1,898.01 | Premium | Increase over base amount of $2,116,67 | Premium |
| 1993[1]. 1994 | 1993 | | 201.7 | 6.10205% | $115.82 | $2,013.83 | $129.16 | $2,245.83 |
| 1995 | 1994 | | 211.0 | 10.99421% | 208.67 | 2,106.68 | 232.71 | 2,349.38 |
| 1996 | 1995 | | 220.4 | 15.93898% | 302.52 | 2,200.53 | 337.38 | 2,454.05 |
| 1997 | 1996 | | 228.3 | 20.09469% | 381.40 | 2,279.41 | 425.34 | 2,542.01 |
| 1998 | 1997 | | 234.7 | 23.46134% | 445.30 | 2,343.31 | 496.60 | 2,613.27 |
| 1999 | 1998 | | 242.4 | 27.51184% | 522.18 | 2,420.19 | 582.33 | 2,699.00 |
| 2000 | 1999 | | 250.7 | 31.87796% | 605.05 | 2,503.06 | 674.75 | 2,791.42 |
| 2001 | 2000 | | 261.0 | 37.29616% | 707.88 | 2,605.89 | 789.44 | 2,906.11 |
| 2002 | 2001 | | 272.9 | 43.55602% | 826.70 | 2,724.71 | 921.94 | 3,038.61 |
| 2003 | 2002 | | 285.7 | 50.28932% | 954.50 | 2,852.51 | 1,064.46 | 3,181.13 |

[1] Plan year began February 1, 1993.

[2] Average for calendar year 1992 was 190.1."

<u>Id</u>. 2–3.

59.   On June 16, 2003, the Trustees forwarded a copy of SSA's June 10 letter to all

assigned operators and related persons obligated to pay premiums to the Combined Fund.

60.     On October 10, 2003, the Combined Fund sent an annual billing statement to each defendant identified in paragraphs 4 through 18 of this Complaint or to a related person to the defendant.  Each billing statement set forth the amount of monthly premium due the Combined Fund beginning October 25, 2003, as well as the defendant's outstanding liability to the Combined Fund for monthly premiums due over past plan years.  The October 10, 2003 billing statements assessed monthly health benefit premiums and unassigned beneficiaries premiums at the higher premium rates set forth at page three of SSA's June 10, 2003 letter to the Trustees and set forth in paragraph 58 of this Second Amended Complaint.

61.     The annual billing statement sent October 10, 2003 to each defendant identified in paragraphs 4 through 18 of this Second Amended Complaint or to a related person to the defendant provided that the annual premium for the plan year beginning October 1, 2003, plus the total difference between the lower premium rates and the higher premium rates for beneficiaries assigned for prior plan years beginning October 1, 1995, through October 1, 2002, is payable in twelve monthly installments due on the 25th of each month, starting October 25, 2003.  The annual billing statements also advised the defendants of any outstanding liability remaining for unpaid premiums due in previous plan years, exclusive of the premium differential.

62.     As a result of their failure to pay their premium obligations in full for the current and/or prior plan year(s), nine of the defendants identified in paragraphs 4 through 18 of this Second Amended Complaint have outstanding premium liability to the Combined Fund as follows:

20

a.      As of May 25, 2004, Defendant Atlas Alloys, Inc. failed to pay the Combined Fund premiums in the amount of $534,402.71;

b.      As of May 25, 2004, Defendant B & L Excavation Co. Inc. failed to pay the Combined Fund premiums in the amount of $18,019.76;

c.      As of May 25, 2004, Defendant Bear Coal Co. Inc. failed to pay the Combined Fund premiums in the amount of $260,715.78;

d.      As of May 25, 2004, Defendant Continental Conveyor & Equipment Co. failed to pay the Combined Fund premiums in the amount of $7,313.67;

e.      As of May 25, 2004, Defendant Contracting Engineering failed to pay the Combined Fund premiums in the amount of $278,128.86;

f.      As of May 25, 2004, Defendant Gem Coal Co. failed to pay the Combined Fund premiums in the amount of $9,966.33;

g.      As of May 25, 2004, Defendant Gene R. Jones Trucking, Inc. failed to pay the Combined Fund premiums in the amount of $7,782.84;

h.      As of May 25, 2004, Defendant Old Circle Coal Co. failed to pay the Combined Fund premiums in the amount of $50,384.94;

i.      As of May 25, 2004, Defendant Sodder Trucking Co., Inc. failed to pay the Combined Fund premiums in the amount of $11,806.65.

<u>COUNT ONE</u>

(Claim for Declaratory Relief)

63.      The Trustees repeat and incorporate by reference the allegations of paragraphs 1 through 62 of this Second Amended Complaint.

21

64.     The higher premium levels stated at page three of SSA's June 10, 2003 letter
reflect a lawful construction of 26 U.S.C. § 9704(b)(2).

## COUNT TWO

### (Claim for Declaratory Relief)

65.     The Trustees repeat and incorporate by reference the allegations of paragraphs 1
through 64 of this Second Amended Complaint.

66.     None of the defendants identified in paragraphs 4 through 18 of this Second
Amended Complaint is entitled to the benefit of the judgment in <u>NCA</u>.

67.     The defendants identified in paragraphs 4 through 18 of this Second Amended
Complaint are obligated to pay to the Combined Fund health benefit premiums and unassigned
beneficiaries premiums for all plan years beginning on or after October 1, 1995, at the "higher
premium" rates set forth at page three of SSA's June 10, 2003 letter to the Trustees.

## COUNT THREE

### (Claim for Monetary and Injunctive Relief)

68.     The Trustees repeat and incorporate by reference the allegations of paragraphs 1
through 67 of this Second Amended Complaint.

69.     As a result of its failure to pay premiums described in paragraph 62 above, each
defendant identified in subparagraphs 62(a) through (i) above has failed to discharge its premium
obligations under § 9704(a) of the Coal Act, 26 U.S.C. § 9704(a), and § 515 of ERISA,
29 U.S.C. § 1145; has caused the Combined Fund to sustain loss of premium income and to incur
administrative and legal expense; has incurred an obligation to pay interest on unpaid amounts
from the date such amounts became due and owing, together with liquidated damages, pursuant

to § 9721 of the Coal Act, 26 U.S.C. § 9721, and §§ 502(g)(2), 515, and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145 and 1451(b).

70.     As a result of its refusal to pay premiums described in paragraph 62 above, each defendant identified in subparagraphs 62(a) through (i) above has demonstrated its continuing intention to withhold payment of it its premium obligations under § 9704(a) of the Coal Act, 26 U.S.C. § 9704(a), and § 515 of ERISA, 29 U.S.C. § 1145, and to cause the Combined Fund to sustain further loss of income and incur administrative and legal expense, and suffer immediate, continuing and irreparable injury.  Plaintiffs are without an adequate remedy at law.

<u>Relief Requested</u>

WHEREFORE, plaintiff Trustees request this Court to enter judgment on their behalf as follows:

A.     Declaring that the higher premium levels stated at page three of SSA's June 10, 2003 letter reflect a lawful construction of 26 U.S.C. § 9704(b)(2);

B.     Declaring that the defendants identified in paragraphs 4 through 18 of this Second Amended Complaint are not entitled to the benefit of the judgment in <u>NCA</u>;

C.     Declaring that, for all plan years beginning on or after October 1, 1995, the defendants identified in paragraphs 4 through 18 of this Second Amended Complaint are obligated to pay to the Combined Fund per beneficiary premiums at the "higher premium" levels described in SSA's June 10, 2003 letter to the Trustees;

D.     Ordering each defendant to pay delinquent amounts due to the Combined Fund identified in subparagraphs 62(a) through (i) above and all other amounts that become due to the Combined Fund and are unpaid from May 25, 2004, to the date of the judgment including all

amounts to come due during the pendency of this action, plus interest thereon from the date such

amounts became due and owing, together with liquidated damages, pursuant to § 9721 of the

Coal Act, 26 U.S.C. § 9721, and §§ 502(g)(2), 515, and 4301(b) of ERISA, 29 U.S.C. §§

1132(g)(2), 1145 and 1451(b);

      E.     Enjoining the defendants identified in subparagraphs 62(a) through (i) of this

Second Amended Complaint to pay their premiums timely to the Combined Fund;

      F.     Awarding the Combined Fund attorney's fees and other costs and disbursements

in this action;

      G.     Retaining jurisdiction of this case pending compliance with its orders; and

      H.     Granting plaintiffs such other and further relief as the Court may deem just and

proper.

                           Respectfully submitted,

                              /s/

| | |
|---|---|
| Howard R. Rubin – No. 16009 | Stephen J. Pollak |
| Sonnenschein Nath & Rosenthal LLP | John Townsend Rich – No. 05794 |
| 1301 K Street, N.W. | Jeffrey D. Fox – No. 16000 |
| Suite 600, East Tower | Shea & Gardner |
| Washington, DC  20005 | 1800 Massachusetts Avenue, N.W. |
| (202) 408-9164 | Washington, DC  20036 |
| | (202) 828-2000 |
| | |
| | William J. Murphy – No. 00497 |
| | John J. Connolly – No. 09537 |
| | Murphy & Shaffer LLC |
| | 36 S. Charles Street, Suite 1400 |
| | Baltimore, MD  21201 |
| | (410) 783-7000 |

                   Attorneys for Plaintiffs Michael H. Holland, et al.,
                   Trustees of the UMWA Combined Benefit Fund

June 22, 2004